UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

KATHLEEN MITCHELL
on behalf of herself and all
others similarly situated,

        Plaintiff,

v.

TRILLIANT FOOD AND NUTRITION, LLC,

        Defendant.

Case No. 19-CV-147

## MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
## MOTION FOR CONDITIONAL CERTIFICATION

On October 1, 2019, Plaintiff Kathleen Mitchell ("Plaintiff") moved the Court to conditionally certify a class bringing a claim under the Fair Labor Standards Act ("FLSA") against Trilliant Food and Nutrition, LLC ("Trilliant"), claiming that overtime was due under the federal FLSA as a result of Trilliant's alleged failure to pay for meal breaks that were clocked in less than 30 minutes under Wisconsin regulation Wis. Admin. Code § DWD 274.02(3). Trilliant files this memorandum in opposition to Plaintiff's motion.

## FACTS

Trilliant is a vertically integrated coffee manufacturing company located in Little Chute, Wisconsin. *Dkt. 20-1, p. 15*. Trilliant procures green coffee beans, which it roasts, grinds, packages and distributes commercially. *Dkt. 20-1, p. 15*.

Trilliant employs approximately 500 workers in production positions. *Dkt. 20-1, p. 21*. Production employees are separated into the following categories: production team member; utility team member; machine operator; production coordinator; and maintenance technicians.

*Dkt. 20-1, p. 25.* The production employees are paid an hourly rate and are overtime-eligible. *Dkt. 20-1, p. 25.*

Trilliant runs 30 to 32 separate production lines at its Little Chute facility, depending on business need. *Affidavit of Katie Bons ("Bons Aff.")* ¶2. Plaintiff, along with one to four other workers, typically is on the "bagging line", which packages and labels whole coffee beans. *Bons Aff* ¶3. An alternate shift of two to five employees works the bagging line on days when Plaintiff's line is not scheduled. *Bons Aff* ¶3.

Trilliant has two lunchrooms, referred to as the north and south lunchrooms. *Bons Aff* ¶4. Each lunchroom contains a time clock. *Bons Aff* ¶5. The bagging line, including Plaintiff, clocks in and out for meal breaks in the north lunchroom. *Bons Aff* ¶6. Approximately 65% of Trilliant's employees use the north lunchroom time clock. *Bons Aff* ¶7. The other 35% use the south lunchroom time clock. *Bons Aff* ¶7.

Trilliant nonexempt employees take one unpaid 30-minute meal break per shift. *Bons Aff* ¶8. The tasks on the bagging line are integrated, so all bagging employees must take their meal breaks simultaneously. *Bons Aff* ¶9; *Dkt. 20-1, p. 46.* Meal breaks are decided by the individual line operator or supervisor. *Bons Aff* ¶10; *Dkt. 20-1, p. 46.* As the line operator, Plaintiff determined the meal break for her line. *Bons Aff* ¶11. Not all lines need to be dismissed simultaneously—some lines can continue while members of that line take their meal break. *Dkt. 20-1, p. 46; Bons Aff* ¶12. The bagging line meal breaks—and meal breaks for all other lines—are not regularly scheduled, but occur at different points each day based on business need. *Dkt. 20-1, p. 45; Bons Aff* ¶13. Rather, each line determines its own break time, decided by the operator or supervisor of that line. *Bons Aff* ¶14.

2

Plaintiff's bagging line is located a one to two-minute walk from the north lunchroom. *Bons Aff ¶15.* All bagging lines, in addition to roasting lines, grinding lines and single serve cup lines, use the north lunchroom time clock. *Bons Aff ¶16.* Some of these lines have a five-minute walk to the north lunchroom. *Bons Aff ¶16.* All other lines use the south lunchroom, which may be located five minutes walking time from their workstation. *Bons Aff ¶.16* All walking time is unencumbered by duties. *Bons Aff ¶17.*

## ARGUMENT

**I.     Plaintiff Has Not Made the Requisite Factual Showing for Conditional Certification.**

The courts of the Seventh Circuit have adopted a "two step" approach to determine whether certification of a collective class is warranted. *See, e.g., Austin v. CUNA Mut. Ins. Soc'y*, 232 F.R.D. 601, 605 (W.D. Wis. 2006). First, the court must determine whether the plaintiff has made a modest factual showing sufficient to demonstrate that the plaintiff or other putative plaintiffs potentially were victims of a common policy or plan that violated the FLSA.[1] *Id.* While this initial inquiry is somewhat lenient, this standard "is not a mere formality." *Adair v. Wis. Bell, Inc.*, No. 08-C-280, 2008 WL 4224360, at *3 (E.D. Wis. Sept. 11, 2008).[2]

Additionally, the plaintiff must prove that the putative class members are "similarly situated". 29 U.S.C. § 216(b). In determining whether individuals are similarly situated, the court "need not accept the plaintiff's allegations as true." *Nehmelman v. Penn Nat'l Gaming, Inc.*, 822 F. Supp. 2d 745, 751 (N.D. Ill. 2011). "[A] conclusory statement fails to demonstrate even a modest factual basis for finding the Plaintiffs and putative class members similarly situated." *Adair*, 2008 WL 4224360, at *9. *See also Mares v. Caesars Entm't*, No. 4:06-cv-

---

[1] The "second step" is addressed upon a decertification motion.
[2] *Dkt. 20-9*

0060, 2007 WL 118877, at *3 (S.D. Ind. Jan. 10, 2007)[3] (holding that a conclusory assertion that, "based upon conversations with others," plaintiff believed similar policies and practices were in effect at other facilities did not suffice to carry the modest burden of showing sufficient similarity).

If the plaintiff has not at least made a modest factual showing that certification is appropriate, "[i]t would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated." *Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003). Moreover, a plaintiff's discovery demands upon conditional certification may impose "a tremendous financial burden to the employer." *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 581 (7th Cir. 1982).

### A. Plaintiff Does Not Identify a Policy Applied to All Potential Class Members.

To conditionally certify a collective class, Plaintiff must identify a company policy common to all members of the putative class that violates the FLSA. *Adair*, 2008 WL 4224360, at *6. *See also Blaney v. Charlotte-Mecklenburg Hosp. Auth.*, No. 3:10-CV-592, 2011 WL 4351631, at *10 (W.D. N.C. Sept. 16, 2011)[4] (denying conditional class certification where "the record before the court demonstrates that there [was] no common policy or scheme and instead individualized questions of fact predominate"). "The assertion that 'if it happened to [me], it must have happened to others,' is insufficient." *Malicki v. Leman USA, Inc.*, No. 17-CV-1674, 2019 WL 699963, at *4 (E.D. Wis. Feb. 20, 2019)[5] (citing *Yockey v. Staffing Solutions, Inc.*, No. 15-CV-411, 2016 WL 7242482, at *6 (S.D. Ind. Dec. 15, 2016)). The Eastern District of Wisconsin has stated:

---

[3] Attached to *Affidavit of Attorney Geoffrey S. Trotier ("Trotier Aff.")* as Ex. 1).
[4] *Trotier Aff.*, Ex. 2
[5] *Trotier Aff.*, Ex. 3.

a plaintiff [seeking certification of a collective action] may not substitute her own judgment for the Court's by averring her "understanding" that her employer had a wide-spread improper practice, while shielding the Court's review of her conclusion and the sufficiency of the facts on which it is based by general assurances that it was formed by her observations and conversations with others. Here, in other words, the plaintiffs may not avoid the requirement of demonstrating to the Court a modest factual showing of support for their claim that they and the putative class were subject to a common unlawful practice by vague assertions that they "understood" this to be true.

*Adair*, 2008 WL 4224360, at \*10.

Moreover, wage claims arising from decisions of individual supervisors, rather than a company-wide policy, are not appropriate for collective treatment. *Adair*, 2008 WL 4224360, at \*7 (internal citations omitted). *See also Martinez v. Regency Janitorial Servs., Inc.*, No. 11-C-259, 2012 WL 252230, at \*4 (E.D. Wis. Jan. 26, 2012)[6] (holding that alleged violations targeted on specific locations or supervisors are generally "insufficient for a company-wide collective action.") (internal citations omitted). When meal break restrictions are not common but vary depending on practices of particular supervisors, they are inappropriate for a collective action. *Miller v. ThedaCare Inc.*, No. 15-C-506, 2016 WL 4532124, at \*6 (E.D. Wis. Aug. 29, 2016)[7].

Unless a policy *per se* violates the FLSA, it will not be enough for conditional certification. In *Martinez v. Regency Janitorial Services, Inc.*, the court declined to certify a conditional class where the plaintiff and putative class members alleged that a 30-minute break period was deducted from their checks even though they frequently had to work through the break period. 2012 WL 252230, at \*2. The *Martinez* court stated that an automatic break deduction policy alone was insufficient to support collective action. *Id.* at \*4. Although the *Martinez* plaintiff provided a statement of a co-worker who claims she was told by her supervisor she was not entitled to a break, the court found that this "at most, reflect[ed] a practice

---

[6] *Trotier Aff., Ex. 4.*
[7] *Dkt. 20-8.*

5

of a single work site" and stated that "[a]lleged violations that are isolated to specific locations or supervisors [were] generally insufficient for a company-wide collective action." *Id.*

Specific to Plaintiff's claims, the FLSA provides a "grace period" for calculating payroll based on scheduled shift start and end times rather than actual clock in and clock out times. *Tom v. Generac Power Sys., Inc.*, No. 17-C-1413, 2018 WL 3696607, at *4 (E.D. Wis. Aug. 3, 2018)[8]. The *Tom* court pointed to 29 C.F.R. § 785.48(a) which states:

> Differences between clock records and actual hours worked. Time clocks are not required. In those cases where time clocks are used, employees who voluntarily come in before their regular starting time or remain after their closing time, do not have to be paid for such periods provided, of course, that they do not engage in any work. Their early or late clock punching may be disregarded. Minor differences between the clock records and actual hours worked cannot ordinarily be avoided, but major discrepancies should be discouraged since they raise a doubt as to the accuracy of the records of the hours actually worked.

The courts of the Seventh Circuit also understand that there may be a lag time between actual clock in or clock out during which plaintiffs are unencumbered by work and otherwise waiting, and that this time is not compensated. *Boelk v. AT&T Teleholdings, Inc.*, 2013 WL 239066, at *9 (W.D. Wis. Jan 10, 2013)[9]. Rather, "the law requires only that employees be compensated for performing 'work'." *Id.* (citing Wis. Admin. Code § DWD 272.12(2)(c)). *See also Musch v. Domtar Indus., Inc.*, 587 F.3d 857, 859 (7th Cir. 2009) (employees must be paid for time spent engaged in "physical or mental exertion . . . controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business.") (internal citations omitted); Wis. Admin. Code § DWD 272.12(1)(a) (applying the same standard).

The Trilliant employee handbook has a break policy, which states:

Breaks Guideline

---

[8] *Trotier Aff., Ex. 5.*
[9] *Trotier Aff., Ex. 6.*

- ✓ Employees will be provided designated paid breaks which vary depending upon their normal work schedule. Employees must stay on premise during paid break periods.
- ✓ Additional unpaid break periods will vary by shift and schedule. Employees must punch in and out and can leave the premise during unpaid breaks.

*Dkt. 20-5, p. 18.*

The break policy is not *per se* unlawful, nor has Plaintiff alleged that it is. Plaintiff cannot point to an unlawful policy covering her entire proposed class. Instead, Plaintiff refers to a "policy in practice". This "policy in practice" only is supported by two declarations that state the declarants' "understanding" of the "policy in practice". This unsupported "understanding" is not sufficient to identify the policy applied to a potential collective class. *See Adair*, 2008 WL 4224360, at *10. At best, it might indicate an individual claim but is "generally insufficient for a company-wide collective action." *Martinez*, 2012 WL 252230, at *4.

Plaintiff has not pointed to a common policy that violated the FLSA. Plaintiff cannot substitute her "understanding" for actual proof of a policy. Furthermore, a plaintiff cannot assert that "if it happened to her it must have happened to others" to support her motion for conditional certification of a collective class. Because plaintiff has not met her burden, the Court should deny her motion for conditional certification.

**B.     Individual Considerations Make Collective Treatment Impossible.**

Conditional certification should be denied if liability likely will depend on an individual determination relative to each plaintiff. *Reich v. Homier Distrib. Co., Inc.*, 362 F. Supp. 2d 1009, 1013-14 (N.D. Ind. 2005). Claims that can only be determined by sifting through issues particular to individual plaintiffs cannot be administered efficiently because those individual issues will predominate over collective concerns. *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 413 (D. Or. 2002). If a case is certified but ultimately can only be resolved by conducting numerous fact-intensive analyses, reconstructing each class member's work and pay history, it would be

contrary to the purposes of collective action, militating against conditional certification. *See Reich*, 362 F. Supp. 2d at 1015.

In determining whether or not to certify a collective action, the core inquiry is whether the putative class members are "similarly situated". 29 U.S.C. § 216(b). The Court must consider the term "similarly situated" in light of the purposes of a collective action. *Molina v. First Line Sols. LLC*, 566 F. Supp. 2d 770, 787 (N.D. Ill. 2007). To establish that the putative class members are similarly situated, Plaintiff must establish that they "were together the victims of a single decision, policy, or plan." *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 857 (N.D. Ill. 2008).

Many other courts have declined to find potential class members similarly situated, denying conditional certification, where liability depended on an individual determination of the facts relevant to the individual's claims. *See, e.g., Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1274-75 (M.D. Ala. 2004) (denying collective action where individualized inquiries required would obviate "the economy of scale envisioned by the FLSA collective action procedure"); *Mike v. Safeco Ins. Co. of Am.*, 274 F. Supp. 2d 216, 220-21 (D. Conn. 2003) ("Because the proof in this case is specific to the individual, Mike has not provided evidence of a common thread binding his proposed class of employees."); *Sheffield*, 211 F.R.D. at 413 ("[A collective] action dominated by issues particular to individual plaintiffs cannot be administered efficiently"); *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 499 (D.N.J. 2000) ("The individual nature of the inquiry required make[s] collective treatment improper in this case."). In determining whether parties are "similarly situated," the court considers factors like any disparate factual and employment settings of the individual plaintiffs, the various individualized defenses available to the defendant, and fairness and procedural considerations.

*Miller v. ThedaCare Inc.*, No. 15-C-506, 2018 WL 472818, at *11 (E.D. Wis. Jan. 18, 2018)[10] (citing *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102-03 (10th Cir. 2001)).

If there are different supervisors within departments who use different staffing models and different team lunch period practices, the parties will not be considered "similarly situated". *Miller*, 2018 WL 472818, at *9. *See also Vang v. Kohler Co.*, 488 Fed. Appx. 146, 147 (7th Cir. 2012) (finding that variable circumstances from individual supervisors departing from a firm wide policy does not present a common question); *Jonites v. Exelon Corp.*, 522 F.3d 721, 726 (7th Cir. 2008) ("The plaintiffs in this case want us to rule that because some Com Ed employees may sometimes do some work at lunch, all Com Ed employees are entitled to pay during their lunch break . . . . It is that argument . . . that is preposterous.").

If a court must consider each allegedly compensable meal period for each employee, the allegations are more appropriately brought as individual claims, to which the defendant has the opportunity to assert individualized defenses. *Miller*, 2018 WL 472818, at *11. Forcing such claims into a collective action would be "inconsistent with the principles of fundamental fairness that the procedural protections of both the FLSA and Rule 23 are intended to insure." *Id.* (granting employer's motion to decertify).

Timekeeping discrepancies are an unavoidable result of any employment relationship, and time clock records are not a perfect demonstration of actual time worked. *Kolish v. Metal Techs., Inc.*, No. 2:16-CV-00145, 2017 WL 525965, at *7 (S.D. Ind. Feb. 8, 2017)[11]. Employees typically engage in personal activities before punching out for meals and after punching back in for the remainder of their shift. For these reasons, "minor differences between the clock records and actual hours worked cannot ordinarily be avoided." 29 C.F.R. § 785.48(a). Employees who

---

[10] *Dkt. 20-12.*
[11] *Trotier Aff., Ex. 7.*

either punch in early or remain punched in after their shift ends do not have to be paid if they are not engaged in work. *Id.* Such "clock punching may also be disregarded" where the periods of time "involved . . . seconds or minutes duration, and where the failure to count such time is due to considerations justified by industrial realities." 29 C.F.R. § 785.47-48.

Plaintiff's claims contain too many individualized considerations to make collective treatment possible. First, there is no uniform break practice—different operators and supervisors, like Plaintiff, decide the break time for each of the 32 individual lines. Second, some lines break together, but some lines allow individual workers to break separately so some lines might have uniform break lengths but lines where employees go separately have further variance in break times. Third, walking time between the work station and time clock should be considered within the 30-minute break meal period; however, each line has a different walking distance. Fourth, all breaks for individual lines change on a daily basis due to business need. Fifth, some lines, like Plaintiff's, cannot start again until all members are back from break, and waiting time need not be compensated according to the FLSA. Sixth, the claim alleged by the proposed collective will require an analysis of each meal punch on each day for each employee, which then must be compared to walking time for each employee, followed by a consideration as to whether that employee had to wait for his/her co-workers to begin work.

This host of inquiries for 32 separate production lines militates against collective action. Considering that Trilliant generally has about 500 employees in these 32 differing lines, and considering that the collective could include approximately 700 employees, this analysis would be burdensome. Accordingly, the Court should not conditionally certify the class proposed by Plaintiff.

### C. Conditional Certification Must Be Based on Admissible Evidence.

Even at the initial certification stage, the Court is not required to simply accept the Plaintiff's allegations as true. *Martinez*, 2012 WL 252230, at *1. Rather, the Court requires *admissible* evidence supporting conditional certification. *Adair*, 2008 WL 4224360, at *10. "The requirement of a modest factual showing by admissible evidence that certification is appropriate does not replace further inquiry once opt-in plaintiffs have been identified, at which point a greater degree and specificity of evidentiary support is needed to stave off a motion for decertification." *Id.* at *8.

Plaintiff has submitted Trilliant's 2019 revised break policy as "evidence" that the prior break policy was *per se* violative of the FLSA. First, the earlier version of the policy does not violate the FLSA. Further, the 2019 revised policy should be considered subsequent remedial measures under Federal Rule of Evidence 407 and, thus, inadmissible. Accordingly, this should not be considered by the Court.

### II. The Proposed Collective Presupposes a State Law Violation that Must Be Individually Established.

Plaintiff bases her overtime claim on an alleged failure to pay for meal breaks that were less than 30 minutes, pursuant to Wis. Admin. Code § DWD 274.02(3). Plaintiff can only state the overtime claim she seeks to certify as a collective if an underlying violation of this Wisconsin regulation has been proved. The Court has declined to hold that a violation of this state law could trigger liability under the FLSA. *See Espenscheid v. Direct Sat. USA, LLC*, 2011 WL 10069108, at *12 (W.D. Wis. Apr. 11, 2011)[12]. Plaintiff's overtime claim, which hinges entirely upon a Wisconsin regulation, is inappropriate for a collective action. Instead, this overtime claim should be addressed as a Rule 23 class claim under Wisconsin's overtime statute.

---

[12] *Trotier Aff., Ex. 8.*

Moreover, any claim under § DWD 274.02(3) must be individually determined based on an analysis of each meal punch for each day by each employee, which is then compared to the employee's walking time, as discussed in § I.C, *supra*. However, Plaintiff has not provided any evidence to substantiate this claim. Therefore, the Court should not conditionally certify the collective class requested by Plaintiff.

### III. Dates Of Birth Are Unnecessary To Identify Putative Class Members.

Plaintiff requests that the Court order Trilliant to provide dates of birth for any collective members it cannot reach through an initial mail campaign. The Court has found that last known address and telephone number of a putative class member is adequate, and birthdate should not be provided. *Ehmann v. Pierce Mfg., Inc.*, No. 16-C-247, 2016 WL 5957275, at *5 (E.D. Wis. Oct. 13, 2016)[13] (citing *Kelly v. Bluegreen Corp.*, 256 F.R.D. 626, 632 (W.D. Wis. 2009) (finding that privacy concerns with personal information like birth dates outweigh any marginal use in locating potential plaintiffs.) Accordingly, the Court should not require Trilliant to provide birth dates for any putative collective or class member.

### IV. Plaintiff's Proposed Notice Is Deficient.

#### A. The Opt-in Notice Incorrectly Applies a Three-Year Limitations Period.

The FLSA provides for a two to three-year limitations period depending on whether the defendant acted willfully. 29 U.S.C. § 255(a). However, the overtime claim for which Plaintiff seeks conditional certification of a collective is grounded in Wisconsin's wage regulations, which apply a two-year limitations period. Wis. Stat. § 893.44(1); Wis. Admin. Code § DWD 274.02(3). Accordingly, the proposed notice should not reference a three-year limitations period. Further, all dates within the notice should be adjusted to reflect a two-year period.

---

[13] *Dkt. 20-7.*

### B. The Opt-In Notice Fails to Include a Statement of Defendant's Position.

The proposed notice provides a limited description of the lawsuit. It outlines the date the Complaint was filed, the "potentially similarly-situated group", and a summary of the Plaintiff's allegations. The proposed notice does not, however, provide any information on Trilliant's position regarding Plaintiff's claims. Such an omission does not provide potential class members with adequate notice that the Plaintiff may not prevail in her claim. *See Williams v. Cargill Meat Sols. Corp.*, No. 09-CV-1006, 2010 WL 2643405, at *2 (E.D. Wis. June 30, 2010)[14] (noting that a statement indicating that the defendant denies that potential class members are entitled to any compensation is adequate to convey the notion that plaintiff may not prevail). Accordingly, the proposed notice should be adjusted to include the statement "Trilliant denies Plaintiff's allegations and denies that potential class members are owed any additional compensation".

### CONCLUSION

For the foregoing reasons, the Court should not conditionally certify the class requested by Plaintiff. Moreover, in the event the Court conditionally certifies the collective class, it should require Plaintiff to revise the opt-in notice as discussed above.

---

[14] *Trotier Aff., Ex. 9.*

**DATED** at Milwaukee, Wisconsin this 22nd day of October, 2019.

                                          s/Geoffrey S. Trotier
                                          Geoffrey S. Trotier, SBN 1047083
                                          Devin S. Hayes, SBN 1089943
                                          von BRIESEN & ROPER, s.c.
                                          411 East Wisconsin Avenue, Suite 1000
                                          Milwaukee, WI 53202
                                          Telephone: (414) 287-1369
                                          Fax: (414) 238-6623
                                          E-mail: gtrotier@vonbriesen.com

                                          *Attorneys for Defendant Trilliant Food and Nutrition, LLC*

33826609_1.DOCX