UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KATHLEEN MITCHELL,

        Plaintiff,

   v.                                       Case No. 19-C-147

TRILLIANT FOOD AND NUTRITION, LLC,

        Defendant.

**DECISION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR CONDITIONAL CERTIFICATION**

Plaintiff Kathleen Mitchell brought this action against Defendant Trilliant Food and Nutrition, LLC, on behalf of herself and other similarly situated employees whom she claims did not receive overtime compensation for all hours worked in violation of the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 201 *et seq.*, and Wisconsin's Wage Payment and Collection Laws (WWPCL). Presently before the court is Mitchell's motion for conditional certification and the authorization of notice of her claims to similarly situated persons. For the following reasons, Mitchell's motion for conditional certification will be granted.

**BACKGROUND**

Trilliant Food and Nutrition, LLC, formerly known as Victor Allen's Coffee, is a privately held company headquartered in Little Chute, Wisconsin. Trilliant is a vertically integrated coffee manufacturing company that procures green coffee beans, which it roasts, grinds, packages, and distributes commercially. Trilliant employs approximately 500 production employees who work on approximately 30 separate production lines at its Little Chute, Wisconsin production facility. Production employees are separated into the following categories: production team member,

utility team member, machine operator, production coordinator, and maintenance technician. Workers on the "bagging line" package and label whole coffee beans. The production employees are paid an hourly rate and are nonexempt. Trilliant's workweek for FLSA and WWPCL purposes was Saturday at 12:00 p.m. through the following Saturday at 11:59 a.m. Trilliant assigned its production employees to crew schedules working twelve-hour shifts on rotating "two-two-three" schedules. Production employees were expected to work at least 40 hours per workweek, or 80 hours per pay period.

Mitchell was employed by Trilliant as a machine operator from November 21, 2016 through January 28, 2019, the date of the complaint. As a machine operator, Mitchell performed job duties comprising a part or portion of Trilliant's production process, along with all other production employees. Mitchell seeks conditional certification of a class of similarly situated employees defined as:

> All hourly-paid, non-exempt Production Employees employed by Defendant within the three (3) years prior to this action's filing who have not been compensated for all hours worked in excess of forty (40) hours in a workweek as a result of Defendant, Trilliant Food & Nutrition, LLC's, failure to compensate said employees at an overtime rate of pay for compensable meal periods lasting less than thirty (30) consecutive, duty-free minutes.

Pl.'s Br. in Supp. at 2, Dkt. No. 18.

## ANALYSIS

**A. Conditional Certification**

The FLSA permits collective actions "against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Unlike a typical class action suit under Federal Rule of Civil Procedure 23, where an unwilling plaintiff must "opt out" of the class, the FLSA requires employees or former employees to "opt in" to the class by giving written consent to become a party to the collective

2

action. *See Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579–80 (7th Cir. 1982) (explaining differences between collective action under the FLSA and class action certification pursuant to Rule 23). District courts may, in their discretion, implement this "opt in" procedure by facilitating notice to potential plaintiffs to an FLSA collective action. *See Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989); *Woods*, 686 F.2d at 580. "The critical inquiry in determining whether a court should exercise its discretion to authorize the sending of notice to potential plaintiffs is whether the representative plaintiff has shown that she is similarly situated to the potential class plaintiffs." *Austin v. CUNA Mut. Ins. Soc.*, 232 F.R.D. 601, 605 (W.D. Wis. 2006). Generally, in order to determine whether the representative plaintiff is "similarly situated" to potential opt-in plaintiffs, this court follows a two-step certification approach. *Adair v. Wis. Bell, Inc.*, No. 08-CV-280, 2008 WL 4224360, at *8 (E.D. Wis. Sept. 11, 2008).

First, the court examines whether the plaintiff has demonstrated a "reasonable basis" for believing that she is similarly situated to potential class members. *Id.* at *3. At the first stage, the plaintiff must make "at least a modest factual showing that such collective action is appropriate." *Id.* at *4. The plaintiff may present factual support in the form of affidavits, declarations, deposition testimony, or other documents in order to demonstrate some "factual nexus between the plaintiff and the proposed class or a common policy that affects all the collective members." *Nehmelman v. Penn Nat'l Gaming, Inc.*, 822 F. Supp. 2d 745, 750 (N.D. Ill. 2011). Though the conditional certification stage is a lenient standard, it is not a "mere formality." *Adair*, 2008 WL 4224360, at *3. Because a plaintiff's "discovery demands upon conditional certification may impose a 'tremendous financial burden to the employer,'" courts must be careful to guard against wasting the parties' time and resources where certification is not appropriate at the outset. *Id.* at *4 (quoting *Woods*, 686 F.2d at 581). Thus, where the plaintiff has not made "at least a modest

3

factual showing that certification is appropriate, 'it would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated.'" *Id.* (quoting *Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003)). If the class is conditionally certified, notice may be sent to other potential class members and discovery may proceed.

At step two, usually on the defendant's motion for decertification, the court must determine whether plaintiffs who have opted in are, in fact, similarly situated. *Brabazon v. Aurora Health Care, Inc.*, No. 10-CV-714, 2011 WL 1131097, at *2 (E.D. Wis. Mar. 28, 2011). At the second stage, the court will assess whether continuing as a collective action will provide efficient resolution in one proceeding of common issues of law and fact. *Hoffmann-La Roche*, 493 U.S. at 170.

Mitchell asserts that she has met the minimal burden to show that others in the potential class are similarly situated. In particular, she claims that all hourly paid, non-exempt production employees have been victims of Trilliant's same unlawful policy in practice that deprived them of compensation for otherwise compensable meal periods because they were not duty-free for at least 30 consecutive minutes. Trilliant counters that conditional certification is inappropriate because Mitchell has not demonstrated that she and the putative class members were victims of a common policy or plan that violated the law.

Mitchell claims that Trilliant's non-exempt employees take one unpaid 30-minute meal break per shift. Tasks on the bagging line are integrated, so all bagging employees must take their meal breaks simultaneously. Individual line operators or supervisors decide when employees can take their meal breaks based on business need. Not all lines need to be dismissed simultaneously;

4

some lines can continue while members of that line take their meal break. Trilliant has two lunchrooms, referred to as the north and south lunchrooms. Each lunchroom contains a time clock. Approximately 65% of Trilliant's employees use the north lunchroom time clock and the other 35% use the south lunchroom time clock. The production employees have a one- to five-minute walk from the lunchroom to their workstation.

Mitchell asserts that Trilliant directed all production employees to "clock out" via Trilliant's electronic timekeeping system and to "clock back in" and physically return to their workstations, work areas, or machines *within* thirty minutes from the time they "clocked out." She alleges that, in practice and on a daily basis, all production employees "clocked out" at the beginning of their meal periods and clocked back in within thirty minutes to walk back to their workstations, thereby taking meal periods lasting less than thirty consecutive, duty-free minutes each workday. Because Trilliant considered all hours "clocked in" by its production employees as compensable hours worked, Mitchell contends that Trilliant uniformly failed to compensate its production employees for those meal periods at an overtime rate of pay.

At this stage, Mitchell has made an adequate showing that she and the other production employees in the putative class are similarly situated. She has described that production employees were required to uniformly leave their work areas, clock out on the electronic timekeeping system, and clock back in and physically return to their work areas within thirty consecutive minutes from the time they clocked out. Mitchell has also submitted evidence to expose a policy in practice of denying employees an uninterrupted 30-minute meal break, including the declaration of Jenny Wyngaard, a former production employee; the deposition testimony of Katie Bons, Trilliant's Director of Human Resources; and Trilliant's Employee

5

Handbook. Trilliant's time records also show that production employees took meal breaks lasting less than thirty consecutive, duty-free minutes.

Trilliant contends that, while Mitchell refers to a "policy in practice" that violates the FLSA, she has failed to establish that its policy is *per se* unlawful. It further asserts that Mitchell's overtime claim, which hinges entirely upon a Wisconsin regulation, is inappropriate for a collective action because it assumes an underlying violation of the Wisconsin regulation has been proved. But Trilliant overemphasizes Mitchell's obligation to prove an actual FLSA violation at this stage. Indeed, the "focus of the inquiry is 'not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated . . . with respect to their allegations that the law has been violated.'" *Jimenez v. GLK Foods LLC*, No. 12-C-209, 2013 WL 3936928, at *3 (E.D. Wis. July 30, 2013) (quoting *Brabazon*, 2011 WL 1131097, at *3). In other words, though plaintiffs pursuing a collective action must plead a claim that does not fail as a matter of law, they need not prove a violation of law at this stage in the proceedings as long as the record contains evidence that substantiates their allegations. And while Trilliant asserts that the individual considerations presented in this case make collective treatment impossible, Def. Br. at 7, Dkt. No. 21, the "mere potential that individual issues may predominate after further discovery does not preclude conditional certification of the class." *See Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 850 (N.D. Ill. 2008). Because the record evidence suggests that production employees were subject to a common policy and that the production employees are similarly situated, I conclude that Mitchell has made a "modest factual showing" of an unwritten policy or practice common to herself and all putative class members, *Adair*, 2008 WL 4224360, at *4, and that conditional certification of a collective action is appropriate.

**B. Court-Authorized Notice**

Attached to her brief in support of conditional certification, Plaintiff has submitted a proposed notice and consent to join form. District courts have discretion in appropriate cases to implement the opt-in provision of § 216(b) by facilitating notice to potential plaintiffs. *Hoffmann-La Roche*, 493 U.S. at 169. However, "courts must be scrupulous to respect judicial neutrality" and to avoid "even the appearance of judicial endorsement of the merits of the action." *Id.* at 174. Although the court will conditionally certify a class for Mitchell's collective action claims, the court will address Trilliant's objections to the proposed notice.

Trilliant asserts that the dates of birth for the collective members are unnecessary to identify the putative class members, that the opt-in notice fails to include a statement of Trilliant's position, and that the notice incorrectly applies a three-year limitations period. In her reply brief, Mitchell agrees not to seek an order compelling Trilliant to provide dates of birth and does not take issue with the insertion of a brief statement of Trilliant's position in the litigation.

With respect to its statute of limitations argument, Trilliant concedes that the FLSA provides for a two- or three-year limitations period depending on whether the defendant acted willfully. *See* 29 U.S.C. § 255(a). It nevertheless asserts that, because Mitchell's overtime claim is grounded in Wisconsin's wage regulations, the claim is subject to Wisconsin's two-year limitations period. Def. Br. at 12 (citing Wis. Stat. § 893.44(1); Wis. Admin. Code § DWD 274.02(3)). The proposed notice states:

> The FLSA has statutes of limitations for two or three years. If you choose to join this action, you may be able to recover damages if you were denied proper compensation, including overtime pay, for overtime hours worked for two or three years prior to the date your Consent to Join Form is filed with the Court. Hours worked beyond two or three years are not recoverable. If you choose not to join this action or to file your own action, some or all of your potential claims may later be barred by the applicable statute of limitations.

Dkt. No. 18-1 at 3.  Mitchell asserts that the notice is appropriate because she alleges that Trilliant acted willfully in violating the FLSA.  Because the proposed notice leaves open the determination of whether the two- or three-year statute of limitations applies, the language contained in the notice regarding the statute of limitations is appropriate.

## CONCLUSION

Based on the record before the court, Mitchell's motion for conditional certification and for authorization of notice to similarly situated persons pursuant to 29 U.S.C. § 216(b) (Dkt. No. 17) is **GRANTED**.  Mitchell's counsel is authorized to issue the proposed notice after including a statement in the notice regarding Trilliant's position in the litigation.  Within 30 days of the date of this order, Trilliant shall provide Mitchell's counsel with the names and last known addresses of all putative collective members, so that Notice can be mailed via U.S. Mail.  Trilliant shall also provide Mitchell's counsel with the telephone numbers and email addresses for any putative collective members whose mailed Notice is returned to counsel after being sent via U.S. Mail for the purpose of assisting counsel with locating the correct address for such individuals to ensure they receive Notice.

**SO ORDERED** at Green Bay, Wisconsin this 12th day of March, 2020.

s/ William C. Griesbach<br>
William C. Griesbach, District Judge<br>
United States District Court